[Civ. No. 1762. Third Appellate District.—November 19, 1917.]

GEORGE F. BEARD, Petitioner, v. CAROLINE M. WEBB, as County Superintendent, etc., Respondent.

SCHOOL LAW—HEALTH AND DEVELOPMENT SUPERVISION ACT—POWERS OF SCHOOL BOARDS—EMPLOYMENT OF OPTOMETRIST.—Under the act of 1909 (Stats. 1909, p. 908), authorizing boards of school trustees and city boards of education to establish health and development supervision in the public schools, and to employ an examining staff and other employees necessary to carry on such work, and under subdivision 21 of section 1617 of the Political Code, authorizing such boards to give diligent care to the health and physical education of pupils and to employ properly certified persons for such work, the boards are vested with a discretion to adopt the entire scheme, or only a portion of it, such as employing an optometrist, keeping in view the necessities of the situation and the finances of the district.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Third Appellate District to compel a county school superintendent to draw her requisition on the county auditor for the salary of an optometrist employed by a city board of education.

The facts are stated in the opinion of the court.

Sheridan Downey, and Arthur M. Seymour, for Petitioner.

Lee Gebhart, for Respondent.

BURNETT, J.—It appears that petitioner is an optometrist duly qualified and licensed to practice as such under the laws of the state of California; that on March 17, 1916, the board of education of the city of Sacramento employed petitioner as such optometrist, at a salary of one thousand six hundred dollars a year, to examine pupils of the public schools of said city in order to discover any visual defects of said pupils in order that such defects, if existing, might be corrected; that petitioner ever since has been and now is so employed, and has fully performed all services required of him by reason of such employment; that respondent during all of said time has been and is now the county superintendent of schools of Sacramento County; that on or about the twenty-eighth day

of July, 1917, said board of education of the city of Sacramento made its order upon said Caroline M. Webb, as such county superintendent, to draw her requisition upon the county auditor of said county for the payment of the salary due petitioner for the month of July, 1917, for services performed under said employment, but respondent refused, and ever since has refused, to draw said requisition; that similar action was taken by said city board of education on August 30, and September 30, 1917, but respondent likewise refused, and still refuses, to honor either of said orders for requisitions. The prayer is, therefore, for a writ of mandate to direct respondent to forthwith draw her requisition on the county auditor for the sum of $399.99 for payment of the salary due petitioner for services performed as such optometrist for the months of July, August, and September, 1917.

The facts are not in dispute. The whole controversy is as to the authority of the city board of education to employ an optometrist to perform such services. The solution of the question depends upon the construction of chapter 598 of the Statutes of 1909 (Stats. 1909, p. 908), being "an act to provide for health and development supervision in the public schools of the state of California," considered in connection with subdivision 21 of section 1617 of the Political Code, approved subsequent to the approval of said chapter 598. Section 1 of said act provides: "Boards of school trustees and city boards of education are hereby authorized to establish health and development supervision in the public schools of this state and to employ an examining staff and other employees necessary to carry on said work and to fix the compensation for the same. Whenever practicable the examining staff for health and development supervision in the public schools of the state shall consist of both educators and physicians." Section 2 enumerates the purposes of supervision, one of them being "to secure the correction of developmental and acquired defects of both pupils and teachers which interfere with health, growth and efficiency, by complete physical examination. Said examination shall occur annually or as often as may be determined by the board of school trustees or city board of education." Section 3 provides for the qualifications of the examining staff. The said subdivision of the Political Code authorizes the boards of education "to give diligent care to the health and physical development of pupils,

and where sufficient funds are provided by district taxation, to employ properly certificated persons for such work.''

The contention of respondent seems to be (1) that under said act of 1909 the board of education is empowered to employ only an examining staff consisting of educators and physicians and employees thereof, and that the board has no authority to employ anyone else, independently of an educator or physician, to contribute to the health and development of the pupils and teachers of the public schools, although the special work for which such person is employed may be foreign to the services usually and properly performed by an educator or physician, and (2) that a board of education must carry out and execute all the purposes of health work as defined in said act or be precluded from doing any such work at the expense of the district.

In considering the first of these propositions it is to be observed that the statute provides not that ''the board is hereby authorized to employ an examining staff and employees,'' but the adjective *other* precedes the word ''employees.'' According to the established and accepted meaning of the word ''other,'' used as an adjective, we must reach the conclusion that the ''examining staff'' are employees of the board in the same class as are the *other* employees contemplated by the statute. In other words, the board of education is not limited to the employment of an examining staff with the authority in that staff to employ assistants to aid in the work, but unless we are to depart from the plain significance of the language employed, we must hold that the legislature has authorized the board to employ an examining staff and the same authority is conferred to employ other suitable persons to carry out the purposes of the statute. Discretion is vested in the board—and wisely so—to employ an examining staff *and* other suitable persons if needed, or to employ simply an ''examining staff'' *or* other persons qualified to contribute to the health and development of the pupils. There is no language in the act, as we understand it, which compels the conclusion that no one can be employed by the board for such purpose except the examining staff. Nor is the employment of such staff an essential prerequisite to the employment of some other person for work which does not naturally fall within the province of an educator or physician. The legislature has seen fit, it is true, to prescribe the qualifications of

the examining board, and has omitted to specify the qualifications of ''other'' persons who may be employed for health supervision. That circumstance, however, does not, we think, militate against the position of petitioner herein. It can readily be understood why some special qualifications might be required of an examining staff having general supervision of the whole range of physical and mental activity and development, and none be prescribed for other employees such as dentists and optometrists whose license under state authority and reputation in their profession would afford sufficient guaranty for faithful and efficient service.

The language of said section of the Political Code also favors the contention of petitioner herein. These acts of the legislature must, of course, be construed together so as to give effect if possible to both. It was clearly the intention of the legislature in the enactment of the later statute to provide for the employment of any professional man whose services might be needed to promote the health of the pupils. This statute certainly contemplates the employment of specialists such as dentists and optometrists. But if the qualifications of an examining staff as provided in the other act are to be required, it is easy to be seen that the primary purpose of the law might be defeated, for physicians and educators would not be qualified to do the particular work required for the health of the pupil. Petitioner quite aptly puts it this way: ''Under respondent's contention, if the board of education desires to employ a chemist to determine the purity of the water used in the public schools, a gymnasium instructor to oversee the exercises of the children, an architect to secure healthful ventilation, a janitor to attach a filter to a hydrant in the public school, a dentist to do dental work, or an optometrist to perform his duties, such board of education must restrict itself in choosing the individuals to perform such duties to those possessing the qualifications of an educator or physician as defined in said act.'' We think the law is not subject to such reproach as thus indicated. The special statute and the general law may be completely harmonized if we keep in mind the purpose of the legislature, and then there is no difficulty in reaching the conclusion that the board of education when deemed advisable or necessary for the well-being of the school may employ suitable persons holding proper licenses from the state to do special work that may be

required, as in the case before us. There may not be sufficient funds for the employment of an examining staff or there may be no necessity for such outlay, while the demand for dental or optometric attention may be quite urgent, and we think there is no good reason why the law may not be so construed as to meet such situation.

Probably what has been said is a sufficient answer to the second contention, which is closely allied to the first. That the board of education must engage in the whole scheme of health supervision and endeavor to carry out the entire purpose of health activity contemplated by the law or else be precluded from engaging in any health conservation whatever seems quite unreasonable, if not absurd. Of course, there is no provision in the law which requires the board of education to exercise all or none of the power thereby conferred. It must be true that where power is bestowed to perform certain enumerated acts for a certain purpose, and there is no clear intention to restrict the discretion of the agency intrusted with the authority, any of those acts may be performed with equal sanction of the law if it be properly related to the accomplishment of the purpose of the legislature. It may be said, we think, that the legislature has defined the limits within which the board of education must exercise authority for the promotion of the health and mental development of the pupils in the public schools, but it has not attempted the vain and foolish thing of providing that if the board is willing or able to do a portion of the work only, it is powerless to act at all. The absurd results to which respondent's construction of the law would lead furnish a persuasive reason for rejecting it and adopting the rational view advocated by petitioner.

We think it may be epitomized in conclusion that while the law provides for the employment of an examining board and defines the qualifications of its members, it also authorizes the board of education to employ suitable persons licensed by the state to do special work for the purpose of promoting the health and efficiency of the pupils, that discretion is vested in the board of education to adopt the entire scheme provided in said law or only a portion of it, keeping in view the necessities of the situation and the financial ability of the district and the commendable and useful purpose of the law, and that nothing has been shown in the case at bar to indicate a vio-

lation by the board of education of any provision of the statute. We therefore conclude that respondent has refused to perform a plain ministerial duty, and the writ of mandate will issue requiring her to draw her requisition on the county auditor in favor of petitioner for the sum of $399.99.

It is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 17, 1918.